or Kustok v. Mitchell. Ms. Lovie, whenever you are ready. Good morning. Thank you for having me. Good morning. Appellant Alan Kustok is seeking a very narrow ruling and a very modest remedy before the court this morning. He's asking this court to reverse the The district court's forfeiture ruling is premised on the state court's imposition of a novel and unforeseeable set of requirements to find the appellant's claim procedurally barred. And so, reversal for consideration on the merits is warranted in this case. Specifically, appellant litigated his direct appeal in state court exactly during a 15-month period between the Illinois Supreme Court's ruling in Veech 2. Veech 1 established the categorical approach that instructed appellant that his type of ineffective assistance of counsel claim was not cognizable on direct appeal. And then Veech 2 repudiated that categorical approach. Can you spend a minute on the timing? Because I thought Mr. Kustok filed his opening brief in his direct appeal before Veech 1 came down. And I don't see how Veech 1 would have affected the scope of his brief, if that's true. But maybe there's a different So Veech 1, which established that the categorical approach was issued in March of 2016. The appellate court's ruling was in August of 2016. When did Mr. Kustok file his opening? In other words, when he's deciding what issues to raise, what's the legal background? It was litigated during, so you're correct in that it began before Veech 1. Right, so he could have raised, since you're focusing on this like little window at this point, I guess before the window opens, he would have rationally raised a Strickland point. And after Veech 2, he would have raised it. But when he files his brief, isn't the Strickland claim available? I would take the position that from the point at which he files the notice of appeal in 2014 until the point at which at least the district or the appellate court decision comes down is when he is litigating his direct appeal and when those kinds of decisions are being made. At the point at which you have to sit down and figure out exactly what date was his reply brief filed? I'm just saying it looks to me like he, when he files his opening brief at least, he is not under the constraint that you're worried about. But the appeal isn't over from the moment of the opening brief, and so counsel is making decisions throughout that appeal about how to do it, about whether to amend his opening, about how to raise it, and Veech 1 captures what was the spirit at that moment in time of what was going on during that 15-month period. So our position is that until his appeal is done, when he files his reply brief, when the district court, I'm sorry, when the appellate court's initial decision comes down and the Illinois Supreme Court's decision comes down, all of that happens during the period between Veech 1 and Veech 2. And what this court's ruling should be premised on is whether or not the law was firmly established and regularly followed at the time. Could you also stop, though, and discuss how the Veech rulings, which are appellate court rulings, right, intersect with the Illinois Supreme Court because I think your opponents argue that the Illinois Supreme Court itself, regardless of what the lower courts are saying, applies its ordinary forfeiture rules for Strickland claims. Well, what the Illinois Supreme Court acknowledges in Veech 2 is that after Veech 1, the courts universally follow that categorical approach, that Veech 1 establishes this categorical approach, and Veech 2 recites a slew of Illinois Veech 1 during that time period and acknowledges that the courts all thought that that was what the rule was and that that's what everyone was following. And so the question here is- But Veech 2 actually cites to the Illinois Supreme Court from 1994. Correct. To say that Veech 1 got it wrong. Veech 2 takes the position- You're saying, though, this has been the position of the Illinois Supreme Court since 1994, that ineffective assistance of counsel, arguments that can be raised that are depending on the record, should be raised on direct appeal. And that has been the law since 1994, not since 2016 or 2014 when he filed his notice or January of 2016 when he would have filed his opening brief, but actually this has been the law since 1994. Correct. And that's exactly our point. It was clear before Veech 1. It has been clear since Veech 1. So this court has issued rulings like Sturgeon and Crutchfield and Mata both before and after this period in between a Veech, but the Veech court muddled it, and this appeal happened exactly during that muddled period. And you have counsel here that really understood that there was an issue of ineffective assistance of counsel and is just trying to figure out how to raise it for this client. So you have the Illinois Appellate Court acknowledging the counsel had deficient performance, and Kirkland and Ellis on direct appeal frame it as an issue of let's review the motion for new trial instead of let's do it as ineffective assistance of counsel because they get confused, and perhaps they were ineffective, but when you look at, but they don't raise it as ineffective assistance of counsel. If we accept the argument that it was not adequate, that it was not clear even amongst appellate courts that this was the rule, at least not until Veech 2. That's what I'm calling in my head. And so with the Supreme Court's decision in Veech, if we go to the merits of Strickland in the time that we have, deficient performance prejudice. And let's talk through just the deficient performance if we were able to get to the merits. If you're able to get to the merits, the Illinois Appellate Court in the case found deficient performance deficient. Counsel didn't contest the key test of this key expert in a crime scene reconstruction. So the Illinois Appellate Court's already found deficient performance. The only issue would be considering under habeas standards whether or not there was prejudice, and that's never happened. This is, if nothing else, a case where cause and prejudice should be applied. You have somebody who has been trying since the moment of his motion for new trial to say, hey, my counsel screwed up. We should have done this test. Come on. And it didn't happen. It didn't happen then. But he had that opportunity, right? I mean, under Illinois procedures, he could have raised it. He could have even raised it pro se at post-trial to say, you know what? My counsel's not raising this. But, Judge, I just want to let you know that I think that he's not doing a good job. He's not representing me correctly. And if he had done that, it would have triggered a procedure in Illinois State Court and the court would have had to address it. So it seems like there were opportunities for him to raise this issue, and I'm happy for him to raise it. Because I would note that, you know, in Beach 2, they list all the appellate courts that agreed with Kuntz and Beach 1. But in all those cases, at least to our reading, the defendants did raise on direct appeal the ineffective assistance strict claim. Right. Well, and respectfully, he does raise it. He just raises it wrong. I mean, there is a motion for new trial that says that where evidence is put on to show that the state's expert screwed up, that this test didn't happen, that his counsel should have, you know, the omission was addressed in a motion for new trial, and it was addressed, you know, he's appointed counsel, Kirkland and Ellis. He trusts that counsel. Counsel raises it. They just don't raise it framing it in the correct way of ineffective assistance of counsel. And at bare minimum, then, there should at least be cause and prejudice for this. The cause being there is ambiguity in the law. We've cited, you know, dozens of Illinois appellate cases to show that there is ambiguity and that, you know, so that's what counsel relied on. There's your cause. And the prejudice is that there is a meritorious strickling claim that has not been heard. The courts have already found deficient performance. The district court strongly suggests that when you apply the 2254 standards that the prejudice ruling by the state courts was incorrect. So you have cause and you have prejudice here even if the court does not accept that this 15-month period should govern to find no forfeiture. At a minimum, the court should find that there's cause and prejudice here. Counsel made the same mistake as the other courts. And I'm sorry. And so the Illinois appellate court found deficient performance and not that your client was failed to show that he was go ahead. I'm sorry. What it found was in the context of the motion for new trial, they presented this evidence to say, hey, the state's expert screwed up soot versus blood. And the appellate court said we won't consider that because your counsel was deficient for not asking for that test, you know, until the 24th hour. Thank you. Thank you. Mr. Fisher. Good morning, Your Honors. Counselor, may it please the court. I'm Assistant Attorney General Garson Fisher for the respondent. As Your Honors have noted, the district court found procedural default here because the petitioner failed as required by Illinois procedural law to raise on direct appeal a claim he could raise on direct appeal. And it was therefore forfeited when he attempted to raise it on post-conviction review. Now, this court has found that Illinois rule of forfeiture to be an adequate state law ground for procedural default, going back well before the Illinois Supreme Court's decision in Veatch. But here's the problem. I mean, yes, I mean, all of that's true, but then there is this interim period of confusion, and it seems that that is exactly when he was trying to litigate these things. So what do we do with that? Well, there are two problems with my friend's argument as to that point, one of which you've noted is a factual issue, which is that in fact the direct appeal was filed, and certainly post-trial motions, which is your honor, noted it's an opportunity under Illinois law to raise ineffective assistance of counsel claims, even pro se, to raise these claims. The ineffective assistance of counsel claim here is based entirely on the trial court record, particularly once we have this post-trial motion where the results of the testing are introduced. So he had the opportunity to raise this claim before the alleged confusion created by Veatch 1. The second problem with that argument, though, is A, that in the Illinois Supreme Court, the court explicitly held this is not a new rule. We are not changing the rule of forfeiture in Illinois. This is the same old longstanding Illinois rule of forfeiture. We're just reinforcing it, and despite the occasional inconsistency in the application of that rule by Illinois appellate courts, this court has long recognized that it is clearly established sufficiently to qualify as inadequate state law ground. The second problem is that in this very case, the Illinois appellate court held that at the moment when petitioner should have been raising his claim on direct appeal, and did not, that the law in Illinois was that his failure to do so would result in forfeiture. I guess my concern is People v. Kuntz, Illinois appellate court 1990, who says, stay away from filing ineffective assistance of counsel cases on direct appeal. Wait until the record is developed. So at least from 1990 through 2017, we have this body of law that is guiding the petitioner as to when do I file this. And so how can we say that it's adequate, that it's clear what to do in this circumstance when you have the appellate court at least since 1990 giving direction, you have 1994 giving direction, and then you have this case in 2017? To be sure, Your Honor, there has been some inconsistency in the application of this forfeiture rule in Illinois appellate courts. That's not the only time, being perfectly forthright here, that's not the only time Illinois appellate courts have said, you should save an ineffective assistance of counsel claim for post-conviction review. As Your Honors have noted, those are situations where the claim was raised on direct appeal, and the appellate court pushed it off to post-conviction review. But more importantly, that question and that issue has been litigated in front of this court multiple times. In Sturgeon, for example, which... I think my question is more directed to, how can we say there's an adequate procedural rule when we recognize there's different direction, that we can also find that this was adequate? Well, that was the question in Sturgeon. The procedural default there was this exact rule of forfeiture, long predating Veach, on an ineffective assistance of counsel claim. So exactly the kind of claim that there has been some inconsistency, especially pre-Veach in the application in the Illinois courts, this court nevertheless said that it was sufficiently clearly established in Illinois law that despite the occasional inconsistency in the application by the intermediate appellate courts, especially given the consistent holdings of the Illinois Supreme Court that this is the rule, that this is clearly established enough to constitute an adequate state law ground. And I would note, Your Honour, that the petitioner sort of pivots to saying, well, but it was confusing for counsel, right? Counsel should have raised it on direct appeal. Counsel should have raised it on the post-trial motion instead of the post-trial motion for additional forensic testing and then seeking a new trial based on that new evidence. To the extent that petitioner's argument is that counsel's confusion about the law provides cause, the law of this court and the U.S. Supreme Court is clear that counsel's confusion is only sufficient if it rises to a level of ineffective assistance of counsel. If that was the cause they wished to use to seek, to excuse procedural defaults here, they needed to present that for a complete round of review, ineffective assistance of appellate counsel, for example, on post-conviction review in Illinois, and then they could have argued it to the federal courts on 2254 review. It was never presented. Ineffective assistance of appellate counsel was not presented for a complete round of review in the Illinois courts. It hasn't been explicitly argued here as cause to excuse default, but that's what would have to happen. How does your argument then not dovetail into people v. Tate? I'm sorry, Your Honour. Could you refresh my recollection about which one that is? The idea that the defendants have to bring this forth on direct appeal when the focus is on actions that counsel did not take. So the rule is that if the basis for the claim depends solely on the record at trial, such that it can be brought on direct appeal, if it doesn't require any additional development of the record, then it must be brought on direct appeal. Here, had counsel not sought the testing after the fact, perhaps we would have a slightly different case under Illinois law. I mean, this would be a question for the Illinois courts whether then seeking additional testing and arguing that this is sort of a failure-to-investigate kind of claim would be something that could have been brought on post-conviction review. But here, the Illinois courts looked at the record here, at the nature of the claim here, and said, in this very case, this is exactly the kind of claim that you do have to bring on direct appeal because it is based solely on the record that was presented at trial. No additional evidence needed to be developed. If Your Honours don't have further questions about procedural default, because the merits of the underlying ineffective assistive counsel claim did come up briefly, in my friend's argument, the easiest way to deal with that claim, if this court should decide to move beyond the procedural default here, would probably be the prejudice prong because the Illinois appellate court on post-conviction review did make an alternate ruling on the merits of the ineffective assistive counsel claim. The petitioner could not demonstrate prejudice. That holding was not objectively unreasonable, which is, of course, the question on applying the relitigation bar under 2254D. There was ample additional evidence. My friend describes this as the key piece of evidence. It was not that. For example... But how do we get the error, if we get to the merits, that Engler didn't know the difference between suit and blood? Well, that was brought out in front of the jury. I mean, one point here is, while this additional testing is not purely cumulative of what was introduced at trial, there was extensive cross-examination about his failure to test this stain. But don't you think they would have had more teeth if they had the test? Well, arguably, Your Honor, and I'll pivot to that in one second, but that's not the only evidence that undermined his opinion. There was also a defense expert who testified that he thought the stain had no indicia of being a blood stain and called into question the state's expert's conclusion, based on just eyeballing it, that it was a blood stain. And notably, that defense expert knew that it had not been tested before trial, as did defense counsel. And it wasn't just defense counsel who decided not to test this stain. The defense expert also didn't ask that the stain be tested to further challenge the state's expert's conclusion. And I think that's because calling into question, via the extensive cross-examination presentation of their own witness, the validity of this particular determination, which, again, is just one tiny piece of the evidence against defendant here that's explored much more robustly in the briefs. I'm not going to delve into it too deeply, but that's almost as valuable as doing the additional testing in this particular situation, particularly given the risk that the testing might have confirmed the state's expert's position or, as turned out to be the case, that it would further undermine the defense theory of the case,  I see that I'm out. The defense counsel accidentally self-inflicted the gunshot wound with the gun in her hand, which the medical examiner said was, and even the defendant's own expert said, was virtually impossible, given she was right-handed and the gunshot wound was to the left side of her face. Or that she, you know, perhaps rolled over on the gun or something and it accidentally discharged. But their own expert said, when they tried to recreate that scenario, it didn't make this kind of soot pattern. It left holes in the pillow and the pillowcase. So the testing, far from exonerating the petitioner, ends up undermining his own theory of the case. Thank you, Mr. Fischer. Thank you, Your Honors. Ms. Lovie, I'll give you a couple of minutes in rebuttal. I guess I'd like to start with the fact that the crime scene reconstruction expert was the heart of the state's case. But you don't have to take my word for it. The district court made findings that suggest that, if it were given the opportunity to do the analysis under 2254, that it would indeed find an unreasonable adjudication of the facts. But the point is that the district court should be making that, in the first instance, not this court, which returns us to the original questions of was there a forfeiture and do cause and prejudice apply. We're of the strong position that there isn't a forfeiture, but I would just like to address some of the cause and prejudice arguments that came up. With regards to cause, as Judge Pryor discussed, there was an inconsistency in the law. Counsel's lapse is the same lapse that dozens of appellate courts were making at that time. And Trevino is on all fours. It doesn't have to be framed as ineffective assistance of appellate counsel. If the law was that ambiguous and you're following the law as you believe it to be, as it was set out to be, that that can be cause for just this sort of lapse. If you take a look at Trevino, it is on all fours with the situation in this case. And with regards to prejudice, like I said, the district court findings strongly suggest that there was prejudice and that they at least found enough prejudice to get us over that initial hurdle to hear the case. And then it is the district court that should, in the first instance, make the merits ruling in this case. Thank you. Thank you. Thank you, counsel. We'll take the case under advisement.